**KILPATRICK TOWNSEND &
STOCKTON LLP**
Lisa Pearson (LP 4916)
Bryan Wolin (BW 8339)
1114 Avenue of the Americas, 21st Floor
New York, New York 10036
Telephone: (212) 775-8700
lpearson@kilpatricktownsend.com
bwolin@kilpatricktownsend.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MIDCAP BUSINESS CREDIT, LLC,<br><br>                              Plaintiff,<br><br>          v.<br><br>MIDCAP FINANCIAL TRUST, MIDCAP FINANCIAL SERVICES, LLC, MIDCAP FINANCIAL SERVICES CAPITAL MANAGEMENT, LLC, MIDCAP FINCO DESIGNATED ACTIVITY COMPANY AND APOLLO CAPITAL MANAGEMENT, L.P.,<br><br>                              Defendants. | 21 Civ. _____<br><br><br>**COMPLAINT** |

Plaintiff MidCap Business Credit, LLC, by and through the undersigned counsel, as and for its complaint against Defendants Midcap Financial Trust (formerly known as Midcap Financial, LLC), Midcap Financial Services, LLC, Midcap Financial Services Capital Management, LLC, MidCap FinCo Designated Activity Company, and Apollo Capital Management, L.P. (collectively "Defendants"), alleges as follows:

## SUBSTANCE OF THE ACTION

1.      Plaintiff MidCap Business Credit, LLC (together with its predecessor in interest by the same name, "Plaintiff MidCap"), known as "MidCap" for short, is a commercial finance

company that extends customized asset-based loans to commercial borrowers secured by accounts receivable, inventory, equipment, real estate, and other assets.

2.      Plaintiff MidCap works with small and mid-size manufacturers, distributors, wholesalers, service companies, and other commercial and industrial businesses throughout the United States and Canada. It provides working capital loans to companies generally unable to obtain traditional bank financing sufficient to support their growth or unique working capital needs.

3.      Plaintiff MidCap has consistently used the trade names, marks, domain names, and social media handles MIDCAP, MIDCAP CREDIT, MIDCAP BUSINESS CREDIT and variants thereof (the "MIDCAP Marks") to identify its financial services since 2004, when it officially changed its name from Hartford Business Credit, LLC to its current name, MidCap Business Credit, LLC, to better reflect its national customer base and expansion plans. Its website at the time, midcapcredit.com, prominently displayed the mark MIDCAP (as shown on the archived web page from May 18, 2004 available at https://web.archive.org/web/20040518143556/http://midcapcredit.com:80/ reproduced below) on each page, and stated: "We provide working capital loans to a wide variety of companies including manufacturers, distributors, wholesalers, and service companies. Plaintiff MidCap and its predecessor company have been in business since 1994 providing working capital financing to companies throughout the United States."



4.      In 2013, Plaintiff MidCap purchased and migrated its primary site to the shorter, premium domain name midcap.com, and continued to use the same MIDCAP branding it adopted in 2004.

5.      Over the past 17 years, Plaintiff MidCap has become a well-known and well-respected lender. Across its five regional North American origination offices, it has consummated over 375 unique loan transactions totaling more than $800 million, and now has a dozen different affiliates with business names incorporating the MIDCAP Marks.

6.      Plaintiff MidCap has poured enormous time, effort, and money into building recognition of the MIDCAP Marks and, through the dint of its hard efforts and substantial investment, the MIDCAP Marks have garnered considerable goodwill in the marketplace.

7.      In addition to the trademark rights Plaintiff MidCap has developed through its continuous use of the MIDCAP Marks over the past 17 years, Plaintiff MidCap is the owner of an incontestable federal trademark registration, Reg. No. 4,797,903, for the mark MIDCAP BUSINESS CREDIT. True and correct copies of Plaintiff's MidCap's registration certificate and

the Notice of Acceptance of its Section 8 and 15 Declarations issued by the U.S. Patent and Trademark Office ("USPTO") are annexed as **Exhibit A**.

8.      Notwithstanding Plaintiff MidCap's prior rights in the MIDCAP Marks for lending services, in or about September 2008, defendant Midcap Financial Trust (then known as Midcap Financial, LLC), a commercial lender then specializing exclusively in providing debt solutions to health care companies, started using the trade name and mark MIDCAP FINANCIAL. When Plaintiff MidCap subsequently learned about this development and raised its concerns about the potential for confusion in the marketplace, Defendant Midcap Financial Trust assured Plaintiff MidCap that Midcap Financial's operations were limited to the niche healthcare submarket so there was very little potential for confusion, and further that it was owned by a private equity firm that was positioning it to be sold, at which time it would change its name and branding to avoid any potential for confusion in the marketplace.

9.      On information and belief, in or about November 2013, Apollo Global Management, LLC acquired Defendant Midcap Financial Trust. However, Midcap Financial Trust's representations that it would rebrand after it was acquired and limit its operations to the healthcare niche proved to be false.

10.     Instead, Midcap Financial Trust and its affiliated companies, including but not limited to the other named defendants, gradually expanded their operations and started offering asset-based loans to mid-sized companies generally. Further, rather than adopting a new and different name, Defendants expanded use of the identifiers MIDCAP and MIDCAP FINANCIAL, using them as an umbrella brand for numerous affiliated entities, which collectively market and sell their services in the United States and other jurisdictions under those marks, including the stylized mark shown below:

4



11.     As a result, Defendants, doing business as MIDCAP and MIDCAP FINANCIAL, began to compete directly with Plaintiff MidCap, bidding on the same deals, competing for the same clients and employees, soliciting business from the same referral sources, and offering their services through the same organizations, publications and other trade channels.

12.     Notwithstanding Defendants' actual knowledge of Plaintiff MidCap's MIDCAP Marks and objections to Defendants' unauthorized use of them, Defendants simply ran roughshod over Plaintiff MidCap's senior trademark rights, creating an untenable situation in which confusion in the marketplace is not merely likely but inevitable. Multiple instances of actual confusion have come to light to date, and they are undoubtedly just the tip of the iceberg.

13.     Defendants' unauthorized use of the trade names, marks, domain names and social media handles MIDCAP, MIDCAP FINANCIAL and variants thereof (the "Infringing Marks") have robbed Plaintiff MidCap of its ability to control and maintain the reputation and goodwill symbolized by its valuable MIDCAP Marks, deceived the public as to the affiliation between the parties, and hindered Plaintiff MidCap's business opportunities and expansion plans.

14.     The parties have engaged in extensive settlement negotiations, exploring a number of different structures in an effort to reach an amicable resolution of this dispute, but Plaintiff MidCap has reluctantly come to the conclusion that Defendants are stringing it along and negotiating in bad faith.

15.     Accordingly, Plaintiff MidCap brings this action for trademark infringement under Section 32(1) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1114(1); unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15

U.S.C. § 1125(a); unfair and deceptive trade practices under New York, N.Y. GBL § 349; and

trademark infringement and unfair competition under New York common law. Plaintiff MidCap

seeks a permanent injunction barring Defendants' ongoing infringement of the MIDCAP Marks

and unfair competition, as well as monetary relief, including an award of Defendants' profits and

Plaintiff MidCap's damages, with appropriate enhancements, attorneys' fees and costs.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. §

1121, under Sections 1331, 1338(a), 1338(b) and 1367 of the Judicial Code, 28 U.S.C. §§ 1331,

1338(a), 1338(b), and 1367, and under principles of pendent jurisdiction.

17.     This Court has personal jurisdiction over Defendants because Defendants do

business in the State of New York, or have transacted business under the Infringing Marks in this

District, engaged in tortious acts in this District by using the Infringing Marks in this District to

promote and sell their services, and harmed Plaintiff MidCap by Defendants' tortious acts both

within and outside this District.

18.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1), (b)(2), and

(c)(2).

## PARTIES

19.     Plaintiff MidCap Business Credit, LLC is a Texas limited liability company with

its principal place of business at 433 South Main Street, Suite 212, West Hartford, CT 06110. It

is the successor in interest to a Connecticut entity by the same name. Plaintiff MidCap has

offered financial services under the MIDCAP Marks since 2004.

20.     Defendant Midcap Financial Trust, formerly known as Midcap Financial, LLC, is

a Delaware corporation with a principal place of business at 7255 Woodmont Avenue, Bethesda,

MD 20814. Defendant Midcap Financial Trust filed a certificate of conversion with the Delaware

Secretary of State on or about January 21, 2015 changing its name from Midcap Financial, LLC to Midcap Financial Trust. On information and belief, as stated in its U.S. Security and Exchange Commission ("SEC") filings, Defendant MidCap Financial Trust is now primarily engaged in the business of asset-backed securities. Its most recent filings identify MidCap Financial Holdings Trust and Defendant MidCap FinCo Designated Activity Company as its principal trustees.

21.     Defendant Midcap Financial Services, LLC is a Delaware limited liability corporation doing business at 7255 Woodmont Avenue, Bethesda, MD 20814, among other locations, and is registered to do business in New York. On information and belief, Defendant Midcap Financial Services, LLC has offices and does business at 551 Fifth Avenue, New York, NY 10176. On information and belief, as stated on or in the "Firm Overview" page of Defendants' website (https://www.midcapfinancial.com/about/firm-overview, last visited September 22, 2021), social media pages and marketing materials, Defendant MidCap Financial Services, LLC provides sourcing, due diligence and portfolio management services to the entities collectively known and referred to by Defendants as "MidCap Financial."

22.     Defendant Midcap Financial Services Capital Management, LLC is a Delaware limited liability corporation with a place of business at 7255 Woodmont Avenue, Bethesda, MD 20814. On information and belief, as stated on the "Our Business" page of Defendants' website (https://www.midcapfinancial.com/about/our-business, last visited September 22, 2021), Defendant MidCap Financial Services Capital Management, LLC is "a registered investment advisor, and has closed hundreds of transactions." On information and belief, Defendant Midcap Financial Services Capital Management, LLC has employees and transacts business under the Infringing Marks in this district.

23.     Defendant MidCap FinCo Designated Activity Company is a private limited company domiciled in Ireland with a place of business at 1st Floor 118 Lower Baggot Street, Dublin 2 Ireland. On information and belief, as stated on or in the "Firm Overview" page of Defendants' website (https://www.midcapfinancial.com/about/firm-overview, last visited September 22, 2021), social media pages and marketing materials, Defendant MidCap FinCo Designated Activity Company is the ultimate parent of Defendant MidCap Financial Services, LLC and other entities doing business under the Infringing Marks; has entered into an investment management agreement with Defendant Apollo Capital Management, L.P. to manage "MidCap Financial"; and has entered into an agreement with Defendant MidCap Financial Services, LLC under which the latter provides sourcing, due diligence and portfolio management services to "MidCap Financial."

24.     Defendant Apollo Capital Management, L.P. is a Delaware limited partnership doing business at 9 West 57th Street, 43rd Floor, New York, NY 10019. On information and belief, as stated on or in the "Firm Overview" page of Defendants' website (https://www.midcapfinancial.com/about/firm-overview, last visited September 22, 2021), social media pages and marketing materials, Defendant Apollo Capital Management, L.P. manages the entities collectively known as "MidCap Financial" pursuant to an investment management agreement between Apollo Capital Management, L.P. and MidCap FinCo Designated Activity Company.

25.     Defendants' website, social media pages, and other marketing materials directed to residents of the United States, including residents of this District, do not differentiate between their numerous business entities doing business as "MidCap" and "MidCap Financial." Rather,

Defendants and their affiliates refer to those entities collectively as "MidCap" or "MidCap Financial," and collectively employ the stylized mark shown in paragraph 10 above as their logo.

26.     Defendants promote their services under the Infringing Marks at their publicly available website, midcapfinancial.com. The terms and conditions of Defendants' website, available at https://www.midcapfinancial.com/about/terms-and-conditions (last visited September 22, 2021) state: "Unless otherwise specified, the materials in or accessible through the Site are directed at residents of the United States, its territories, possessions, and protectorates."

27.     For example, each page of Defendants' website "directed to residents of the United States," including residents of this District, is branded with their Midcap Financial logo, and the "firm overview" (https://midcapfinancial.com/about/firm-overview (last visited September 22, 2021) states:

> MidCap Financial provides revolving and term debt facilities to middle market companies in North America and Europe….
>
> **MidCap Financial refers to MidCap FinCo Designated Activity Company, a private limited company domiciled in Ireland, and its subsidiaries, including MidCap Financial Services, LLC**. MidCap Financial Services, LLC provides sourcing, due diligence and portfolio management services to MidCap FinCo Designated Activity Company pursuant to a services agreement.
>
> MidCap Financial is managed by Apollo Capital Management, L.P., a subsidiary of Apollo Global Management Inc. Pursuant to an investment management agreement between Apollo Capital Management, L.P. and MidCap FinCo Designated Activity Company.
>
> Unless otherwise noted, **references to MidCap Financial used on this website can refer to MidCap FinCo Designated Activity Company and/or one or more of its subsidiaries (including MidCap Financial Services, LLC) as context requires**.

(Emphasis supplied.)

28.    Similarly, in a 2021 "Midcap Financial" pitch book branded with the Midcap Financial logo, available at https://www.midcapfinancial.com/MidCap_Pitchbook_2021_Q1.pdf (last visited September 22, 2021), Defendants present "Midcap Financial" as a "Leading Debt Provider of Middle Market Loans" and "Experts in originating, underwriting, executing & distributing cash flow based leveraged loans." A fine print disclosure at page 10 of the document states:

> MidCap FinCo Designated Activity Company, MidCap Financial (or any of its affiliates, "MidCap") is managed by Apollo Capital Management, L.P., a subsidiary of Apollo pursuant to an investment management agreement between Apollo Capital Management, L.P. and MidCap FinCo Designated Activity Company. MidCap professionals are employees of MidCap Financial Services, LLC or MidCap Financial Services Ireland Limited. **MidCap Financial refers to MidCap FinCo Designated Activity Company, a private limited company domiciled in Ireland, and its subsidiaries, including MidCap Financial Services, LLC.** MidCap Financial Services, LLC employs all personnel and provides sourcing, due diligence and portfolio management services to MidCap FinCo Designated Activity Company pursuant to a services agreement. All MidCap Financial personnel referenced in this presentation are currently employees of MidCap Financial Services, LLC or MidCap Financial Services Ireland Limited. MidCap Financial is managed by Apollo Capital Management, L.P., a subsidiary of Apollo Global Management, pursuant to an investment management agreement between Apollo Capital Management, L.P. and MidCap FinCo Designated Activity Company.
>
> **References to MidCap Financial prior to January 2015 are to its predecessor, MidCap Financial, LLC**.

(Emphasis supplied.)

29.    Defendants' publicly available profile on the professional networking site LinkedIn (https://www.linkedin.com/company/midcap-financial/, last visited September 22, 2021), similarly uses Defendants' Midcap Financial logo and states:

> As of December 2020, MidCap Financial manages or services over $29.8 billion of commitment, of which $5.0 billion is managed by our registered investment advisor MidCap Financial Services Capital Management LLC.

> **MidCap Financial refers to MidCap FinCo Designated Activity Company, a designated activity company limited by shares incorporated under the laws of Ireland, and its subsidiaries, including MidCap Financial Trust**. MidCap Financial is managed by Apollo Capital Management, L.P., a subsidiary of Apollo Global Management, Inc. MidCap Financial Services, LLC provides sourcing, due diligence and portfolio management services to MidCap Financial.

(Emphasis supplied.)

30.     The same LinkedIn company profile indicates that approximately 22 "Midcap Financial" employees with individual profiles on the site are based in the greater New York City area. *See* https://www.linkedin.com/company/midcap-financial/people/ (last visited September 22, 2021).

31.     On information and belief, each of the Defendants has, at a minimum, transacted business under the Infringing Marks or advertised and promoted Defendants' services under the Infringing Marks in this District.

32.     On information and belief, additional entities affiliated with the named Defendants have also transacted business or advertised and promoted their services under the Infringing Marks in this District, and Plaintiff MidCap reserves the right to add additional defendants at a later date.

## FACTS SUPPORTING PLAINTIFF MIDCAP'S REQUESTED RELIEF

**PLAINTIFF'S MIDCAP BRAND**

33.     Since at least as early as February 2004, Plaintiff MidCap has continuously used the MIDCAP Marks in interstate commerce to identify its commercial lending services.

34.     Plaintiff MidCap's predecessor in interest, also named MidCap Business Credit, LLC, adopted that name and began building the MIDCAP brand in early 2004. On February 5, 2004, it officially changed its name from Hartford Business Credit, LLC to MidCap Business Credit, LLC. Shortly thereafter it launched the website, midcapcredit.com, with its new branding,

featuring on every page its MIDCAP logo shown in the screenshot of the site as of May 18, 2004 depicted in paragraph 3 above.

35.    On or about January 11, 2013, Plaintiff MidCap purchased the premium domain name midcap.com and migrated its primary website to that domain, which Plaintiff MidCap has used without interruption through to the present. Plaintiff MidCap also still uses the domain name midcapcredit.com, which automatically redirects visitors to midcap.com. Plaintiff's branding under the MIDCAP Marks has remained constant, as shown by the following screenshot of the homepage from September 21, 2021:



36.    In furtherance of its brand strategy and expansion plans, Plaintiff MidCap has authorized numerous affiliates to adopt business names incorporating the MIDCAP Marks to bring them under its MIDCAP brand.

37.    To announce each of its deals and other noteworthy items such as new hires, Plaintiff MidCap typically distributes press releases and "tombstone" advertisements, sending them to industry publications and its mailing list, and posting them on social media and its

website. Frequently, the broker, investment banker, financial advisor, or consultant who referred a deal to Plaintiff MidCap also promotes the transaction and Plaintiff MidCap's involvement. Plaintiff MidCap also regularly receives media coverage in industry publications such as The Asset Based Finance Journal, The Asset Based Lending Advisor, and The Secured Lender. True and correct copies of representative press releases, tombstones, and other marketing materials distributed by Plaintiff MidCap are annexed as **Exhibit B**. True and correct excerpts of representative industry media coverage of and industry awards given to Plaintiff MidCap are annexed as **Exhibit C**.

38.     Plaintiff MidCap has also built widespread recognition of the MIDCAP Marks through its sustained participation in virtually every annual national industry event, many interim national events, and nearly monthly regional events, sponsored by groups such as the Secured Finance Network and Turnaround Management Association. Plaintiff MidCap's employees regularly present at industry conferences and contribute to or are quoted in industry publications.

39.     This type of direct marketing is common in the asset-based lending industry. The primary sources of new business are professionals within commercial banks, investment banks, turn-around consulting firms, and in more recent years, private equity sponsors, and privately held wealth management companies, as well as attorneys and accountants.

40.     Plaintiff MidCap's marketing has emphasized its creativity, flexibility, customized debt solutions, and experienced team of seasoned professionals.

41.     Plaintiff MidCap, its transactions, and its team members have received numerous nominations and awards. This year, MidCap Business Credit's Founder Richard Mount received the prestigious Secured Finance National Achievement Award and was inducted into its Hall of Fame. *See* **Exhibit C** at pp. 18.

**PLAINTIFF'S MIDCAP MARKS**

42.     As a result of Plaintiff MidCap's extensive and continuous use of the MIDCAP

Marks since 2004, Plaintiff MidCap has established strong common law rights in the MIDCAP

Marks for asset based lending and related financial services.

43.     In addition to its common law rights in the MIDCAP Marks, Plaintiff MidCap

secured a federal service mark registration from the USPTO for MIDCAP BUSINESS CREDIT

("Registered MIDCAP Mark") on August 25, 2015. That application was filed on June 5, 2014

and published for opposition on June 9, 2015. No opposition proceedings were filed.

44.     True and correct copies of the registration certificate for the Registered MIDCAP

Mark and the USPTO's Notice of Acceptance/Acknowledgement of Plaintiff MidCap's Section

8 and 15 Declarations are included in **Exhibit A.** The particulars of the Registered MIDCAP

Mark are summarized in the following table:

| Mark | Registration No. | Goods/Services | Key Dates | Mark Owner |
|---|---|---|---|---|
| MIDCAP BUSINESS CREDIT | Reg. No. 4,797,903 | Class 36: Financial services, namely, providing commercial loans and commercial loan servicing programs. | *Application Filed*: June 5, 2014 *Registered*: August 25, 2015 *Section 8 & 15 Filed*: May 19, 2021 *Section 8 & 15 Filings Accepted*: September 5, 2021 | MidCap Business Credit, LLC |

45.     The Registered MIDCAP Mark is valid, subsisting, and in full force and effect.

Furthermore, the Registered MIDCAP Mark is now incontestable pursuant to 15 U.S.C. § 1065.

Pursuant to 15 U.S.C. § 1115(b), "the registration shall be **conclusive** evidence of the validity of

the registered mark and of the registration of the mark, of the registrant's ownership of the mark,

and of the registrant's exclusive right to use the registered mark in commerce." (Emphasis

supplied.)

46.     Plaintiff MidCap also has a pending application for the MIDCAP mark for

commercial lending services, the particulars of which are summarized in the table below.

| Mark | Application No. | Goods/Services | Key Dates | Mark Owner |
|---|---|---|---|---|
| MIDCAP | Ser. No. 90/844,904 | Class 36: Commercial lending services | *Application Filed*: July 23, 2021 | MidCap Business Credit, LLC |

**DEFENDANTS' INFRINGEMENT OF PLAINTIFF MIDCAP'S MIDCAP MARKS**

47.     In or about 2008, unbeknownst to Plaintiff MidCap, Defendant Midcap Financial

Trust, which was at the time named Midcap Financial, LLC, began doing business as a

"commercial finance firm that focuses exclusively on providing debt solutions to middle market

health care companies," according to contemporaneous posts on its website

midcapfinancial.com. Lending to healthcare companies is a subspecialty in the finance industry

due to its myriad unique features. By way of example, healthcare businesses are heavily

regulated by both state and federal governments, and their receivables are structured in unusual

and complex ways. For these reasons, among others, Plaintiff MidCap did (and does) not target

the healthcare sector, but it was nevertheless concerned that Defendant Midcap Financial Trust's

use of the identifiers MIDCAP and MIDCAP FINANCIAL for its lending services could

potentially create confusion in the marketplace.

48.     On or about August 15, 2012, Jeff Black, then-CEO of Plaintiff MidCap, spoke

with Howard Widra, then-CEO of Midcap Financial, LLC (now Midcap Financial Trust), by

telephone to discuss Plaintiff MidCap's concerns.

49.     During that call, Mr. Widra stated that Midcap Financial had no plans or intention to expand beyond its healthcare niche. Mr. Widra also stated that his company would likely be sold shortly, at which time it would change its name and omit the term MIDCAP. In reliance on Mr. Widra's representations, and given the niche nature of healthcare lending, Plaintiff MidCap reasonably believed that its concerns would soon be resolved without escalating the dispute.

50.     On information and belief, in or about November 2013, the global investment management company Apollo Global Management, LLC acquired Defendant Midcap Financial Trust. When Plaintiff MidCap subsequently learned about the acquisition, it assumed the new owner would in due course rebrand Midcap Financial, as Mr. Widra had previously represented.

51.     In or about August 2014, Plaintiff MidCap learned that "Midcap Financial" was planning to offer asset-based lending to companies of all types. Further, "Midcap Financial" had still not changed its name or branding.

52.     This new state of affairs presented a far greater likelihood of confusion and threat to Plaintiff MidCap's growing MIDCAP brand. Accordingly, on or about September 19, 2014, Plaintiff MidCap sent a demand letter to Midcap Financial, LLC (now Defendant Midcap Financial Trust) objecting to its use of the Infringing Marks, and noting that confusion would likely ensue – if it had not already begun.

53.     The parties then commenced settlement negotiations in an effort to resolve this conflict amicably, exploring a series of different structures to achieve that end. Plaintiff MidCap believed that both sides were negotiating in good faith and would be able to find a mutually acceptable business resolution that would resolve the problem.

54.     Throughout the parties' negotiations, Plaintiff MidCap continued to stand on its objections to Defendants' infringement of the MIDCAP Marks and to strengthen its own rights

in the MIDCAP Marks. It obtained its registration for the above-referenced Registered MidCap Mark, filed its above-referenced application for MIDCAP in Class 36, and continued to strengthen its common law rights through its use and promotion of the MIDCAP Marks.

55.    To date, the parties' protracted negotiations have not resulted in a mutually acceptable settlement, and Plaintiff MidCap has reluctantly reached the conclusion that, despite their assurances, Defendants are not negotiating in good faith. To the contrary, Defendants have not only coopted Plaintiff MidCap's MIDCAP Marks, but have also coopted Plaintiff MidCap's brand positioning in the marketplace. Defendants' website, midcapfinancial.com (last visited September 22, 2021), touts:

- "MidCap Financial is a middle market-focused, specialty finance firm that provides senior debt solutions to companies across all industries";

- "Since our founding in 2008, we have been working with management teams and sponsors to deliver thoughtful and cost effective debt solutions. Companies need a lender that understands their business and has the creativity and flexibility to provide financing solutions that are suited to their needs";

- "MidCap Financial was created to address the increasing unmet need for flexible and creative debt solutions to the middle market";

- "MidCap is led by a team of seasoned investment professionals "; and

- "Our decades of industry and credit market experience provides us with the ability to deftly assess and deliver customized financing needs for our portfolio companies."

56.    There is no issue as to priority of use. Defendants' website confirms that "Midcap Financial" was not even founded until 2008, four years after Plaintiff MidCap commenced use of the MIDCAP Marks in commerce.

57.     Plaintiff MidCap has never authorized or consented to Defendants' use of the Infringing Marks.

58.     Defendants' unlawful use of the Infringing Marks is ongoing, confusion in the marketplace is mounting, and the parties have been unable to resolve their dispute amicably. Accordingly, court intervention is necessary to protect Plaintiff MidCap and the public from the confusion resulting from Defendants' use of the Infringing Marks for lending services in direct competition with Plaintiff MidCap.

**ACTUAL CONFUSION CAUSED BY DEFENDANTS' USE OF THE MIDCAP BRAND**

59.     The likelihood of confusion caused by Defendants' unlawful use of Plaintiff MidCap's MIDCAP Marks is not merely likely. Numerous instances of actual confusion have already come to light. A few representative examples are described immediately below.

60.     In July 2012, Plaintiff MidCap received an email from a contact and referral source at Wells Fargo Capital Finance concerning a recent award given to Defendants, erroneously congratulating Plaintiff MidCap on receiving the award.

61.     In June 2014, an employee of Salus Capital Partners, another one of Plaintiff MidCap's referral sources, emailed Plaintiff MidCap to send his congratulations concerning a recent hire. However, it was Defendants that hired the individual in question, not Plaintiff MidCap.

62.     In September 2017, Seth Cooper, Senior Vice President of Plaintiff MidCap, was selected as a "CFA 40 Under 40" award recipient. Defendants were not selected for the award. The award sponsor's original announcements of the award featured Defendants' name and logo until they were belatedly corrected at Plaintiff MidCap's request.

63.     In September 2020, Plaintiff MidCap secured Briggs Management Partners, a Massachusetts company, as a potential client. Briggs Managament Partners sent Plaintiff MidCap a Nondisclosure Agreement to sign, but the signature line for Plaintiff MidCap was for "Midcap Financial, LLC."

64.     In April 2021, the news outlet Law360 published an article about about DataQ, LLC, a California company. DataQ, LLC was a client of Plaintiff MidCap, but the Law360 article erroneously identifed "Midcap Financial" as its lender.

65.     In September 2021, big-four accounting firm KPMG prepared a pitch-book for one of Plaintiff MidCap's borrowers. In that pitch-book, KPMG incorrectly referred to Plaintiff MidCap as "Midcap Financial." This pitch-book is intended to be circulated widely among a market segment of substantial importance to Plaintiff MidCap, leaving even more confusion in its wake.

66.     The website abladvisor.com is, according to its "about" webpage, a website delivering "articles authored by subject matter experts, blogs presenting the views of industry leaders in numerous fields, industry/sector/economic data, industry deal tables, lender and service provider directory listings, and The Advisor Professional Network – a cutting-edge network built specifically to connect commercial finance professionals nationally." A search for articles on this website concerning "Midcap Financial" provides a mix of articles about Plaintiff MidCap and the Defendants.

67.     As these representative examples illustrate, confusion in the marketplace is real, actual and ongoing. Accordingly, Defendants' uses of the Infringing Marks are likely to cause confusion, or to cause mistake, or to deceive the public into believing that the financial services

offered by Defendants under the Infringing Marks are offered or authorized by Plaintiff MidCap, when in fact they are not.

68.     Defendants' uses of the Infringing Marks are also likely to create reverse confusion, by inducing the public into believing, erroneously, that the services offered by Plaintiff MidCap under the MIDCAP Marks are offered or authorized by Defendants, or that Plaintiff MidCap is infringing Defendants' trademark rights.

69.     Defendants' uses of the Infringing Marks are also likely to create initial interest confusion, by initially attracting potential business partners who have been deceived concerning the relationship between the parties, who then enter into business relationships with Defendants rather than Plaintiff MidCap.

70.     Defendants' uses of the Infringing Marks are also likely to create post-sale confusion, by causing third parties who were not involved in the original financial transaction to believe, erroneously, that a transaction consummated by Plaintiff MidCap was consummated by one of the Defendants, or vice versa.

71.     Plaintiff MidCap has no control over the activities of Defendants or the quality of the services they offer under the Infringing Marks. Persons with issues or complaints about Defendants or their services may well erroneously hold Plaintiff MidCap accountable, tarnishing Plaintiff MidCap's hard earned reputation and goodwill.

72.     Defendants' unlawful conduct is intentional, fraudulent, malicious, willful and wanton.

73.     Defendants are causing irreparable injury to Plaintiff MidCap, and will continue to harm Plaintiff MidCap and deceive the public unless enjoined by this Court. Plaintiff MidCap has no adequate remedy at law. In addition to monetary remedies, Plaintiff MidCap is entitled to

permanent injunctive relief in light of the irreparable harm caused by Defendants' intentional infringement of Plaintiff MidCap's trademark rights and the public's compelling interest in averting confusion and deception in the marketplace.

## FIRST CLAIM FOR RELIEF
## FOR TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT
## (15 U.S.C. § 1114)

74.     Plaintiff MidCap repeats and re-alleges each and every allegation set forth in the foregoing paragraphs, and incorporates them herein by reference.

75.     Plaintiff MidCap owns U.S. Reg. No. 4,797,903 for the Registered MIDCAP Mark.

76.     Defendants' unauthorized use of confusingly similar variants of Plaintiff MidCap's Registered MIDCAP Mark for identical or closely related services is likely to cause confusion, mistake, or deception as to the source or sponsorship of the services offered by Defendants.

77.     Plaintiff MidCap began using in commerce its Registered MIDCAP Mark years before each Defendant first used the Infringing Marks for their identical and closely related services. Defendants have progressively expanded their uses and further encroached upon Plaintiff MidCap's trademark rights. Further, they have done so with actual knowledge of Plaintiff MidCap's prior use of the MIDCAP Marks and registration of the Registered MIDCAP Mark, and they have done so despite Mr. Widra's representations that use of the Infringing Marks would be limited to the healthcare sector and phased out in due course.

78.     Defendants' Infringing Marks are confusingly similar in appearance, sound, meaning and commercial impression to Plaintiff MidCap's Registered MIDCAP Mark. The predominant component of that mark and Defendants' Infringing Marks is the term MIDCAP, and Defendants emphasize that term in their Midcap Financial logo.

21

79.   The parties' respective MIDCAP-branded services are marketed through the same marketing channels, covered by the same media, and offered through the same channels of trade. To the extent not already offered by Plaintiff MidCap, the services offered by Defendants under Defendants' Infringing Marks are within the reasonable and logical zone of expansion for Plaintiff MidCap's MIDCAP brand.

80.   Defendants' use of the Infringing Marks is likely to cause confusion, or to cause mistake, or to deceive, and has in fact caused actual confusion and mistake in the marketplace by even the most sophisticated players.

81.   Defendants have long had actual and constructive notice of Plaintiff MidCap's Registered MIDCAP Mark and Plaintiff MidCap's objections to their unauthorized use of MIDCAP. Defendants have acted in bad faith and intentionally expanded use of the Infringing Marks notwithstanding their knowledge of Plaintiff MidCap's prior rights. Defendants' use of confusingly similar variants of Plaintiff MidCap's Registered MIDCAP Mark for directly competitive and closely related services constitutes willful trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

## SECOND CLAIM FOR RELIEF
## FOR UNFAIR COMPETITION UNDER THE LANHAM ACT
### (15 U.S.C. § 1125(a))

82.   Plaintiff MidCap repeats and re-alleges each and every allegation set forth in the foregoing paragraphs, and incorporates them herein by reference.

83.   Plaintiff MidCap has used the MIDCAP Marks continuously since 2004 to identify its lending services. To the best of Plaintiff MidCap's knowledge, information, and belief, its use of the term MIDCAP as a source identifier for lending services has been substantially exclusive but for Defendants' infringing uses.

84.     Defendants' uses of the Infringing Marks in connection with Defendants' lending and related services is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association between Defendants and Plaintiff MidCap and their respective services.

85.     Defendants are using Defendants' Infringing Marks with full knowledge of Plaintiff MidCap's prior rights in the MIDCAP Marks, and notwithstanding Plaintiff MidCap's objections.

86.     Defendants' unlawful acts of unfair competition are willful and deliberate.

87.     Defendants' unauthorized advertising, distribution and sale of services bearing the Infringing Marks violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**THIRD CLAIM FOR RELIEF FOR**
**UNFAIR AND DECEPTIVE TRADE PRACTICES UNDER NEW YORK LAW**
**(N.Y. GEN. BUS. LAW § 349)**

88.     Plaintiff MidCap repeats and re-alleges each and every allegation set forth in the foregoing paragraphs, and incorporates them herein by reference.

89.     By reason of the acts set forth above, Defendants have been and are engaged in deceptive acts or practices in the conduct of a business, trade or commerce in violation of New York's General Business Law § 349, and the unfair and deceptive trade practices statutes of several other states.

90.     The public is likely to be damaged as a result of Defendants' deceptive trade practices or acts.

**FOURTH CLAIM FOR RELIEF FOR**
**COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

91.     Plaintiff MidCap repeats and re-alleges each and every allegation set forth in the foregoing paragraphs, and incorporates them herein by reference.

92.     Defendants' unauthorized advertising, distribution and sale of services under Plaintiff MidCap's MIDCAP Marks or confusingly similar variants thereof constitutes a false designation of origin and a false description or representation as to the affiliation or association between the parties, and is thereby likely to confuse consumers.

93.     Defendants' acts of unfair competition are willful and deliberate.

94.     Defendants' marketing, sale and distribution of goods and services under Defendants' Infringing Marks constitutes common law trademark infringement and unfair competition.

**WHEREFORE**, Plaintiff MidCap demands judgment as follows:

1.     That an injunction be issued enjoining Defendants, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Defendants, and all those in active concert and participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

a)     distributing, circulating, selling, offering for sale, marketing, advertising, or promoting any financial services under Plaintiff MidCap's MIDCAP Marks, Defendants' Infringing Marks, or any confusingly similar variants thereof, or engaging in any other acts that tend to deceive, mislead, or confuse the public into believing that there is any relationship or affiliation between Plaintiff MidCap and Defendants or their respective services;

b)     using Plaintiff MidCap's MIDCAP Marks, Defendants' Infringing Marks, or any confusingly similar variants thereof in connection with any other goods or services in a manner that is likely to deceive, mislead, or confuse the public into believing that there is any relationship or affiliation between Plaintiff MidCap and Defendants or their respective goods or services;

c)      imitating, copying, or making unauthorized use of Plaintiff MidCap's MIDCAP Marks and other branding indicia in connection with Defendants' goods or services;

d)      distributing, circulating, selling, offering for sale, advertising, promoting or displaying the Infringing Marks or any other simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiff MidCap's MIDCAP Marks;

e)      using Plaintiff MidCap's MIDCAP Marks, Defendants' Infringing Marks, or any confusingly similar variants thereof in any trade name, domain name, or social media tag or handle in such fashion as to create a likelihood of confusion, or mistake, or deception as to the relationship between the parties or their respective services;

f)      using any false designation of origin or false description, or performing any act likely to mislead members of the trade or public into believing, erroneously, that there is any business relationship or connection between Defendants and Plaintiff MidCap, or their respective services, or that Plaintiff MidCap (rather than Defendants) is engaged in trademark infringement, unfair competition, and unfair and deceptive business practices;

g)      engaging in any other activity constituting unfair competition with Plaintiff MidCap, or constituting infringement of Plaintiff MidCap's MIDCAP Marks;

h)      making any false representations or false descriptions of fact concerning or relating to Plaintiff MidCap or any goods or services offered under Plaintiff MidCap's MIDCAP Marks, Defendants' Infringing Marks, or any variants thereof; and

i)      instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (h) above.

2.      Directing that Defendants make available to Plaintiff MidCap for review, inspection and copying all books, records (including all hard drives on computers used for

25

business purposes, including servers, as well as all computer disks and back up disks) and other documents and things concerning the purchase or sale of services offered under or in connection with the Infringing Marks, or any other marketing materials or packaging incorporating the Infringing Marks or any other simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiff MidCap's MIDCAP Marks;

3.      Directing that Defendants deliver to Plaintiff MidCap's counsel for destruction at Defendants' costs all signs, packaging, promotional material, advertising material, and any other item that bears, contains or incorporates Plaintiff MidCap's MIDCAP Marks, and/or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, including Defendants' Infringing Marks;

4.      Directing that Defendants recall from all manufacturers, distributors or other recipients any and all signs, packaging, promotional material, advertising material, and any other item that bears, contains or incorporates Plaintiff MidCap's MIDCAP Marks, and/or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, including Defendants' Infringing Marks, and, upon recall, to deliver such materials to Plaintiff MidCap's counsel for destruction at Defendants' cost;

5.      Awarding Plaintiff MidCap actual damages, trebled pursuant to 15 U.S.C. § 1117(a) and (b), arising out of Defendants' acts of willful trademark infringement and unfair competition;

6.      Requiring Defendants to account for and pay to Plaintiff MidCap any and all profits derived by Defendants' uses of the Infringing Marks, and that such profits be enhanced as provided for by 15 U.S.C. § 1117(a)

7.      Awarding Plaintiff MidCap actual damages, trebled, and attorneys' fees pursuant to N.Y. GEN. BUS. LAW § 349(h);

8.      Awarding Plaintiff MidCap interest, including pre-judgment interest, on the foregoing sums;

9.      Awarding Plaintiff MidCap costs in this civil action, including reasonable attorneys' fees and expenses, pursuant to 15 U.S.C. § 1117(a) and state law;

10.     Awarding Plaintiff MidCap exemplary and punitive damages to deter any future willful infringement as the Court finds appropriate;

11.     Directing that each Defendant file with the Court and serve upon Plaintiff MidCap's counsel within thirty (30) days after entry of judgment a report in writing under oath setting forth in detail the manner and form in which every Defendant has complied with the above; and

12.     Awarding Plaintiff MidCap such other and further relief as the Court may deem just and proper.

DATED:  September 22, 2021              Respectfully submitted,

                                       KILPATRICK TOWNSEND & STOCKTON LLP

                                       By: */s/ Lisa Pearson*

                                       Lisa Pearson (LP 4916)
                                       Bryan Wolin (BW 8339)
                                       1114 Avenue of the Americas
                                       New York, New York 10036
                                       Telephone: (212) 775-8700
                                       lpearson@kilpatricktownsend.com
                                       bwolin@kilpatricktownsend.com

                                       *Attorneys for Plaintiff*