| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | | |
|---|---|---|
| MIDCAP BUSINESS CREDIT, LLC,<br><br>                Plaintiff,<br><br>    v.<br><br>MIDCAP FINANCIAL TRUST, MIDCAP<br>FINANCIAL SERVICES, LLC, MIDCAP<br>FINANCIAL SERVICES CAPITAL<br>MANAGEMENT, LLC, MIDCAP FINCO<br>DESIGNATED ACTIVITY COMPANY, AND<br>APOLLO CAPITAL MANAGEMENT, L.P.,<br><br>              Defendants. | | Case No: 1:21-cv-07922-AKH |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

DEBEVOISE & PLIMPTON LLP
   James J. Pastore
   Jared I. Kagan

919 Third Avenue
New York, NY 10022
(212) 909-6000
jjpastore@debevoise.com
jikagan@debevoise.com

*Attorneys for Defendants MidCap Financial Trust,
MidCap Financial Services, LLC, MidCap
Financial Services Capital Management, LLC,
MidCap FinCo Designated Activity Company,
and Apollo Capital Management, L.P.*

December 3, 2021

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................. 3

ARGUMENT ....................................................................................................................... 6

I.      THE COMPLAINT FAILS TO STATE THE BASIC ELEMENTS OF TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION CLAIMS ......................................... 6

    A.    Plaintiff Does Not Own Protectable Trademark Rights In MIDCAP ........................ 6

        1.    *Plaintiff's Registration for MIDCAP BUSINESS CREDIT Does Not Establish Protectable Rights in MIDCAP* ......................................................... 6

        2.    *Plaintiff Fails To Allege It Established Secondary Meaning In MIDCAP Before Defendants Began Using MIDCAP FINANCIAL* ................................. 10

    B.    The Complaint Fails To Plausibly Allege A Likelihood Of Confusion .................... 13

II.     PLAINTIFF'S CLAIMS ARE BARRED BY LACHES ................................................. 20

III.    THE NEW YORK GENERAL BUSINESS LAW CLAIM SHOULD BE DISMISSED BECAUSE THERE ARE NO ALLEGATIONS OF HARM TO PUBLIC HEALTH OR SAFETY ......................................................................................................................... 23

CONCLUSION ................................................................................................................... 26

## TABLE OF AUTHORITIES

CASES

*Beneficial Corp. v. Beneficial Capital Corp.*,
    529 F. Supp. 445 (S.D.N.Y. 1982) ............................................................................8, 9, 17

*Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*,
    No. 11 Civ. 8921(DAB), 2013 WL 6670584 (S.D.N.Y. Mar. 29, 2013) ........................20, 24

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*,
    973 F.2d 1033 (2d Cir. 1992)....................................................................................9

*Brockmeyer v. Hearst Corp.*,
    248 F. Supp. 2d 281 (S.D.N.Y. 2003)........................................................................15

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*,
    11 F. Supp. 3d 317 (E.D.N.Y. 2014) ..........................................................................13

*Codename Enters., Inc. v. Fremantlemedia N. Am., Inc.*,
    16 Civ. 1267 (AT) (SN), 2018 WL 3407709 (S.D.N.Y. Jan. 12, 2018)...........................19

*Conopco, Inc. v. Campbell Soup Co.*,
    95 F.3d 187 (2d Cir. 1996).................................................................................21, 22, 23

*Converse, Inc. v. Int'l Trade Commission Skechers U.S.A., Inc.*,
    909 F.3d 1110 (2d Cir. 2018)....................................................................................9

*Cross Commerce Media, Inc. v. Collective, Inc.*,
    841 F.3d 155 (2d Cir. 2016)......................................................................................9

*Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*,
    451 F.3d 295 (2d Cir. 2006)......................................................................................12

*E.A. Sween Co., Inc. v. A & M Deli Express Inc.*,
    787 F. App'x 780 (2d Cir. 2019) .......................................................................14, 16, 20

*Faber v. Metro Life Ins. Co.*,
    648 F.3d 98 (2d Cir. 2011).......................................................................................12

*Fitzpatrick v. Sony-BMG Music Ent., Inc.*,
    No. 07 Civ. 2933(SAS), 2007 WL 2398801 (S.D.N.Y. Aug. 15, 2007) ........................20, 21

*Franklin Res., Inc. v. Franklin Mgmt. Corp.*,
    988 F. Supp. 322 (S.D.N.Y. 1997) .............................................................................17

*Gruner + Jahr USA Publ'g, a Div. of Gruner + Jahr Printing & Publ'g Co. v. Meredith Corp.*, 991 F.2d 1072 (2d Cir. 1993) ..............................................................6, 15

*Haggar Int'l Corp. v. United Co. for Food Indus. Corp.*,
    906 F. Supp. 2d 96 (E.D.N.Y. 2012) ...........................................................21

*Hello I Am Elliot, Inc. v. Sine*,
    19 Civ. 6905 (PAE), 2020 WL 3619505 (S.D.N.Y. July 2, 2020) ........................13

*Hypnotic Hats, Ltd. v. Wintermantel Enter., LLC*,
    335 F. Supp. 3d 566 (S.D.N.Y. 2018) ..........................................................18

*Ill. Tool Works Inc. v. J-B Weld Co., LLC*,
    No. 3:19-cv-1434 (JAM), 2021 WL 4310576 (D. Conn. Sept.22, 2021) ...............22

*In re Merrill Lynch Ltd. P'ships Litig.*,
    154 F.3d 56 (2d Cir. 1998).......................................................................25

*In re RiseSmart Inc.*,
    104 U.S.P.Q.2d 1931 (T.T.A.B. 2012) ...........................................................7

*In re Salomon Analyst Winstar Litig.*,
    No. 02 Civ. 6171(GEL), 2006 WL 510526 (S.D.N.Y. Feb. 28, 2006)...................11

*Island Software and Computer Serv., Inc. v. Microsoft Corp.*,
    413 F.3d 257 (2d Cir. 2005).......................................................................3

*J.T. Colby & Co., Inc. v. Apple Inc.*,
    2013 WL1903883 (S.D.N.Y. May 8, 2013) .....................................................15

*Jackson v. State of Conn. Dep't of Public Health*,
    No. 15-cv-750 (CSH) 2016 WL 3460304 (D. Conn. June 20, 2016)...................12

*Kelly-Brown v. Winfrey*,
    95 F. Supp. 3d 350 (S.D.N.Y. 2015)............................................................11

*La Cibeles, Inc. v. Adipar, Ltd.*,
    No. 99Civ.4129(AGS), 2000 WL 1253240 (S.D.N.Y. Sept. 1, 2000) ...................24

*Lang v. Retirement Living Publ'g Co.*,
    949 F.2d 576 (2d Cir. 1991)......................................................................19

*Le Book Publ'g, Inc. v. Black Book Photography, Inc.*,
    418 F. Supp. 2d 305 (S.D.N.Y. 2005)...................................................14,16, 20

*Lopez v. Adidas Am., Inc.*,
19-cv-7631 (LJL), 2020 WL 2539116 (S.D.N.Y. May 19, 2020) ....................................14, 20

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
209 F. Supp. 3d 612 (S.D.N.Y. 2016)...............................................................................15, 24

*Malletier v. Dooney & Bourke, Inc.*,
561 F. Supp. 2d 368 (S.D.N.Y. 2008)......................................................................................18

*Miller v. Glenn Miller Prods., Inc.*,
454 F.3d 975 (9th Cir. 2006) ............................................................................................21, 23

*MyPlayCity, Inc. v. Conduit Ltd.*,
No. 10 Civ. 1615(CM), 2012 WL 1107648 (S.D.N.Y. Mar. 30, 2012)............................23, 24

*N.Y. Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*,
497 F.3d 109 (2d Cir. 2007)......................................................................................................25

*N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel, LLC*,
293 F.3d 550 (2d Cir. 2002)......................................................................................................18

*Omicron Capital, LLC v. Omicron Capital LLC*,
433 F. Supp. 2d 382 (S.D.N.Y. 2006)................................................................................17, 19

*Paco Sport, Ltd. v. Paco Rabanne Parfums*,
86 F. Supp. 2d 305 (S.D.N.Y. 2000).........................................................................................7

*PaperCutter, Inc. v. Fay's Drug Co., Inc.*,
900 F.2d 558 (2d Cir. 1990).....................................................................................................11

*Polaroid Corp. v. Polarad Electronics Corp.*
287 F.2d 492 (2d Cir. 1961)...............................................................................................13, 14

*Programmed Tax Sys. v. Raytheon Co.*,
439 F. Supp. 1128 (S.D.N.Y. 1977).........................................................................................18

*Richemont N. Am., Inc. v. Huang*,
No. 12 Civ. 4443(KBF), 2013 WL 5345814 (S.D.N.Y. Sept. 24, 2013) ..................................6

*Saratoga Vichy Spring Co., Inc. v. Lehman*,
625 F.2d 1037 (2d Cir. 1980).................................................................................................9, 11

*Solow Bldg. Co., LLC v. Nine West Group, Inc.*,
No. 00 Civ. 7685(DC), 2001 WL 736794 (S.D.N.Y. June 29, 2001)......................................21

*Sports Traveler, Inc. v. Advance Magazine Pubs., Inc.*,
   No. 96 Civ. 5150 (JFK), 1997 WL 137443 (S.D.N.Y. Mar. 24, 1997) .................................24

*Star Indus. Inc. v. Bacardi & Co., Ltd.*,
   412 F.3d 373 (2d Cir. 2005)..................................................................................................20

*Telebrands Corp. v. Del Labs., Inc.*,
   719 F. Supp. 2d 283 (S.D.N.Y.2010)......................................................................................3

*United Mine Workers v. Gibbs*,
   383 U.S. 715 (1966)..............................................................................................................25

*Valencia v. Universal City Studios LLC*,
   14-cv-00528-RWS, 2014 WL 7240526 ...................................................................................8

*World Wrestling Ent., Inc. v. Jakks Pac., Inc.*,
   530 F. Supp. 2d 486 (S.D.N.Y. 2007).....................................................................................25

## STATUTES

New York General Business Law § 349 ................................................................................23, 24

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)................................................................................................................1

6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32:121.75 (5th ed. 2021) .............14

Trademark Manual of Examining Procedure § 1209.....................................................................4

Trademark Manual of Examining Procedure § 1212.................................................................4, 7

Defendants MidCap Financial Trust, MidCap Financial Services, LLC, MidCap Financial Services Capital Management, LLC, MidCap FinCo Designated Activity Company, and Apollo Capital Management, L.P. (together, the "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint of Plaintiff MidCap Business Credit, LLC (the "Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This trademark case concerns Defendants' use of the name MIDCAP FINANCIAL to provide commercial lending services to middle market (i.e., "midcap") companies. Since 2008, Defendants' business has co-existed with Plaintiff's operation, MIDCAP BUSINESS CREDIT. Despite more than 13 years of co-existence, Plaintiff now has filed suit alleging there is intolerable confusion in the marketplace that this Court must remedy. Plaintiff's claims hinge on the remarkable contention that Plaintiff owns protectable trademark rights in the word "midcap," a ubiquitous term in the financial services industry used to identify a particular class of companies. Plaintiff's claims fail, and the Complaint should be dismissed for three principal reasons.

First, Plaintiff owns no protectable trademark rights in the word "midcap." "Midcap" is a dictionary word that is used widely in the financial services industry, including in connection with stock indices (*e.g.* Russel MidCap Index and S&P 400 MidCap Index), other lenders with whom Plaintiff ostensibly competes (*e.g.* MidCap Hotel Loans and MidCap Loans), mutual funds (*e.g.*, Vanguard Mid-Cap Growth Funds and Thompson MidCap Fund), and financial advisors (*e.g.*, MidCap Advisors). No single company can monopolize the word "midcap," but that is precisely what Plaintiff is trying to do. The Complaint attempts to elide Plaintiff's untenable position (that it alone controls "midcap" in the financial services industry) by pointing to Plaintiff's federal trademark registration for MIDCAP BUSINESS CREDIT. But that

registration confers no rights in the word "midcap" on its own, a point Plaintiff conceded before the United States Patent and Trademark Office in order to obtain its registration for MIDCAP BUSINESS CREDIT.

Second, the Complaint fails, as a matter of law, to plausibly allege a likelihood of confusion, which is the touchstone for any trademark infringement case. Even a cursory review of the parties' respective branding shows that the marks look nothing alike. There is no similarity in color, font, or content:

 

Instead, the Complaint alleges confusion on the thinest of reeds—the shared common word "midcap." But as the Complaint highlights, Plaintiff's sources of business include professionals within commerical banks, investment banks, consulting firms, private equity sponsors, and accountants, all of whom understand "midcap" is a common word used by many different companies to designate middle market companies. More importantly, it is implausible that these sophisticated customers would obtain millions of dollars in financing from Defendants on the mistaken belief that they are dealing with Plaintiff, or vice versa.

Third, this is the rare case where the doctrine of laches can and should be applied at the pleading stage to bar suit. Plaintiff concedes it has been aware of MIDCAP FINANCIAL since at least 2012, and alleges it sent a demand letter to Defendants in 2014. The Complaint is otherwise devoid of facts evincing any effort by Plaintiff to police its MIDCAP BUSINESS CREDIT mark for nearly a decade. During that time, while Plaintiff slept on its purported rights,

Defendants continued to invest in and expand their businesses. They would suffer substantial prejudice if Plaintiff's suit were now permitted to proceed after Plaintiff stood idly by for years after becoming aware of Defendants' use of the MIDCAP FINANCIAL mark.

Given Plaintiff's failure to allege the minimum facts necessary to establish protectable rights in "midcap" or any likelihood of confusion, and in light of Plaintiff's long delay in bringing suit, the Complaint should be dismissed in its entirety.

<u>**FACTUAL BACKGROUND**</u>

The Complaint alleges that, since 2004, Plaintiff has used the names MIDCAP, MIDCAP CREDIT, and MIDCAP BUSINESS CREDIT to identify its asset-based lending services, and has displayed the MIDCAP name on its website, as shown at right.[1] Compl. ¶ 3.[2]



In 2014, Plaintiff applied to the United States Patent and Trademark Office (the "USPTO") to register MIDCAP BUSINESS CREDIT as a trademark. *See* Plaintiff's Application, attached as Exhibit ("Ex.") B to the Declaration of Jared I. Kagan (Dec. 3, 2021).[3] The Trademark Examiner "refuse[d] registration on the Principal Register because the proposed mark merely describes the services." Ex. C at 1 (Sept. 17, 2014 Office Action) (citing

---

[1] There is a question as to whether Plaintiff has used the MIDCAP name continuously since 2004. Plaintiff's website states that its CEO, Jeff Black, was responsible for Plaintiff's "recapitalization and restart" in 2009, suggesting that there was a period of dormancy. *See* https://midcap.com/our-team/ (last visited December 2, 2021).

[2] A copy of the Complaint filed in this action is attached as Exhibit A to the Declaration of Jared I. Kagan (Dec. 3, 2021), submitted herewith.

[3] The Court may take judicial notice of Plaintiff's trademark application and other documents publicly filed with the USPTO. *Telebrands Corp. v. Del Labs., Inc.*, 719 F. Supp. 2d 283, 287 n.3 (S.D.N.Y. 2010) ("The Court may properly take judicial notice of official records of the United States Patent and Trademark Office and the United States Copyright Office.") (citing *Island Software and Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005)).

Trademark Manual of Examining Procedure ("TMEP") § 1209, which provides that "[m]atter that 'merely describes' the goods or services on or in connection with which it is used is not registrable . . . .").[4]

In particular, the Trademark Examiner stated that, because the term MIDCAP is "defined as '$1 billion to $5 billion in capitalization' . . . [t]he applicant's mark merely describes the features or characteristics of the services, namely, providing commercial loan and programs to $1–$5 billion capitalized businesses. Consequently, the mark is unregistrable on the Principal Register." *Id.* at 2.

Plaintiff did not dispute that MIDCAP is merely descriptive of the services it offers. Instead, Plaintiff amended its application pursuant to Section 2(f) of the Lanham Act, which permits descriptive marks to be registered "upon proof of acquired distinctiveness, or 'secondary meaning,' that is, proof that it has become distinctive as applied to the applicant's goods or services in commerce." TMEP § 1212. Plaintiff claimed that the ***entire mark*** MIDCAP BUSINESS CREDIT—not MIDCAP standing alone—had acquired distinctiveness; the full mark MIDCAP BUSINESS CREDIT was registered on that basis on August 25, 2015. Ex. E at 1 (Amendment) (amending application to claim acquired distinctiveness as to the entire mark); Ex. F (MIDCAP BUSINESS CREDIT registration certificate). Despite now claiming to have used MIDCAP since 2004, Compl. ¶ 3, Plaintiff never sought to register MIDCAP as a trademark with the USPTO until July 2021—just two months before it filed this lawsuit. *Id.* ¶ 46; Ex. G. That application remains pending as of this filing.

In September 2008—six years *before* Plaintiff applied to register MIDCAP BUSINESS CREDIT as a trademark—Defendant MidCap Financial Trust (then known as MidCap Financial,

---

[4]    The TMEP is publicly available at:  https://tmep.uspto.gov/RDMS/TMEP/current

LLC) ("MidCap Financial") began using the name MIDCAP FINANCIAL to provide commercial lending services to midcap (i.e., middle market) companies. *Id.* ¶ 8. Defendants, whose legal names all include the word "midcap" (with the exception of Apollo Capital Management, L.P.), use the stylized mark shown below to market their services. *Id.* ¶ 10. The Complaint is devoid of factual allegations that Defendants market themselves as "MIDCAP" standing alone. It alleges just two passing references to the term "MidCap," one contained in a single paragraph of a 12-page pitch book, and the other in a single sentence on Defendants' website. *Id.* ¶¶ 28, 55.

The Complaint is silent on precisely when Plaintiff became aware of Defendants' use of MIDCAP FINANCIAL, but it was no later than August 2012, when Plaintiff alleges that its CEO contacted the CEO of Midcap Financial to voice "concerns" about purported confusion in the marketplace. *Id.* ¶ 48. In September 2014—six years after Defendant MidCap Financial allegedly first used MIDCAP FINANCIAL, and three months after Plaintiff filed its trademark application for MIDCAP BUSINESS CREDIT—Plaintiff sent a demand letter to one of the Defendants. *Id.* ¶ 52.[5] Seven years later, on September 22, 2021, Plaintiff filed the instant lawsuit.

---

[5] Despite now alleging that it knew about Defendants' use of MIDCAP FINANCIAL since 2012 and sent a demand letter in September 2014, Plaintiff told the USPTO on March 17, 2015: "Applicant currently has many competitors, and none of them use the term 'Mid Cap.'" Ex. D at 2 (Sept. 17, 2014 Office Action Response). If the Plaintiff committed fraud on the USPTO, that would render the registration invalid.

<u>**ARGUMENT**</u>

**I.  The Complaint Fails To State The Basic Elements Of Trademark Infringement And Unfair Competition Claims**

Plaintiff's first, second, and fourth claims for trademark infringement and unfair competition must be dismissed because Plaintiff fails to plead the basic elements of those claims: (1) it owns a valid mark that is entitled to protection, and (2) Defendants' use of the mark is likely to cause consumer confusion with Plaintiff's mark. *See Gruner + Jahr USA Publ'g, a Div. of Gruner + Jahr Printing & Publ'g Co. v. Meredith Corp.*, 991 F.2d 1072, 1074 (2d Cir. 1993) (elements of Lanham Act infringement claim); *Richemont N. Am., Inc. v. Huang*, No. 12 Civ. 4443(KBF), 2013 WL 5345814, at *5 n.15 (S.D.N.Y. Sept. 24, 2013) (same elements apply to federal unfair competition and common law infringement and unfair competition claims).

**A.  Plaintiff Does Not Own Protectable Trademark Rights In MIDCAP**

1.  *Plaintiff's Registration for MIDCAP BUSINESS CREDIT Does Not Establish Protectable Rights in MIDCAP*

The Complaint emphasizes Plaintiff's registered trademark for MIDCAP BUSINESS CREDIT, but the Complaint leaves no doubt that Plaintiff is attempting to monopolize the word "midcap" rather than simply protect its federally registered trademark.  The Complaint is devoid of any allegations that Defendants ever used Plaintiff's registered trademark, and the allegations make clear that Plaintiff's concern is that the "predominant component of [Plaintiff's registered] mark and Defendants' [MIDCAP FINANCIAL mark] is the term MIDCAP, and Defendants emphasize that term in their Midcap Financial logo."  Compl. ¶ 78; *see also id.* ¶ 83 (citing Plaintiff's "use of the term MIDCAP as a source identifier for lending services").

Plaintiff cannot leverage its federal registration for MIDCAP BUSINESS CREDIT to establish protectable trademark rights in the word "midcap" standing alone.  As the USPTO

stated when it initially denied Plaintiff's application for MIDCAP BUSINESS CREDIT, "[t]he

term 'MIDCAP' is defined as '$1 billion to $5 billion capitalization" and therefore, Plaintiff's

"mark *merely describes* the features or characteristics of the services, namely, providing

commercial loan[s] and programs to $1–$5 billion capitalized businesses[, . . . and therefore was]

unregistrable on the Principal Register." Ex. C at 2 (Office Action) (emphasis added).

Plaintiff did not challenge the USPTO's finding, but instead submitted evidence that *the*

*entire mark* MIDCAP BUSINESS CREDIT had acquired distinctiveness and could therefore be

registered on that basis. Ex. D (Sept. 17, 2014 Office Action Response). That amendment was a

concession by Plaintiff that MIDCAP is a descriptive term that is not inherently distinctive, as

would be required to register MIDCAP by itself. *See* TMEP § 1212.02(b) (a claim of

distinctiveness under Section 2(f) "may be construed as conceding that the matter to which it

pertains is not inherently distinctive and, thus, not registrable on the Principal Register absent

proof of acquired distinctiveness"); *see also In re RiseSmart Inc.*, 104 U.S.P.Q.2d 1931, 1932

(T.T.A.B. 2012) ("[W]hen an applicant responds to a refusal based on mere descriptiveness of a

mark, or portion of a mark, by claiming acquired distinctiveness, such amendment to seek

registration under Section 2(f) of the Trademark Act is considered an admission that the

proposed mark is not inherently distinctive.").

Courts in the Second Circuit have held that the owner of a registered trademark cannot

rely on its registration to establish protectable trademark rights in a single component of the

mark. In other words, the presumption of distinctiveness afforded by Plaintiff's trademark

registration for MIDCAP BUSINESS CREDIT "applies only to the trademark as a whole, and

does not extend to its components." *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d

305, 312 (S.D.N.Y. 2000) (plaintiff's trademark registration for PACO RABANNE for clothing

did not create the presumption that the trademark PACO is distinctive when used on clothing); *see also Valencia v. Universal City Studios LLC*, 14-cv-00528-RWS, 2014 WL 7240526, at *7 (N.D. Ga. Dec. 18, 2014) (plaintiff's trademark "rights in the composite name 'Honey Rockwell' do not confer rights in the single name 'Honey'").

*Beneficial Corp. v. Beneficial Capital Corp.*, 529 F. Supp. 445 (S.D.N.Y. 1982), is particularly instructive on this point. Like the parties here, the parties in *Beneficial* were "in the business of lending money," and the plaintiffs alleged that the defendants' use of the word "Beneficial" was likely to cause confusion with the plaintiffs. *Id.* at 447. The court rejected the plaintiffs' "argument that they need not prove secondary meaning [*i.e.*, acquired distinctiveness] for the name 'Beneficial' because they have registered the mark 'Beneficial Finance System.'" *Id.* 447 n.1. The court carefully delineated the bounds of the rights conferred by the registration, noting that "the term registered by plaintiffs was Beneficial Finance System, not Beneficial, and it cannot be assumed that the name Beneficial, standing alone, would have been found sufficiently distinctive to register." *Id.*

The same reasoning applies with greater force here: unlike in *Beneficial Corp.*, the USPTO initially refused to register MIDCAP BUSINESS CREDIT and instead required Plaintiff to establish that the **whole term** had acquired distinctiveness. There is, therefore, even less reason to expand the scope of the registration beyond the precise mark (MIDCAP BUSINESS CREDIT) for which Plaintiff owns a registration.

The Second Circuit similarly held that a plaintiff's trademark registration for SARATOGA VICHY as applied to soft drinks and mineral water did not establish protectable rights in the term SARATOGA standing alone: "Saratoga Vichy's trademark is 'Saratoga Vichy,' not 'Saratoga.' . . . . In order to claim that the [defendants'] mark 'Saratoga Geyser' is an

infringement, therefore, Saratoga Vichy must establish that the term 'Saratoga' has acquired a secondary meaning that refers to its own product." *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1042 (2d Cir. 1980). For the same reasons, Plaintiff cannot rely on its trademark registration for MIDCAP BUSINESS CREDIT to establish protectable trademark rights in "midcap" standing alone.

But even if Plaintiff's registration for MIDCAP BUSINESS CREDIT could establish that the term "midcap" standing alone has *acquired* distinctiveness (and it does not), the registration is of no help to Plaintiff in this case because it post-dates Defendants' adoption of the MIDCAP FINANCIAL mark. A trademark registration pursuant to Section 2(f) (the basis on which Plaintiff's registration for MIDCAP BUSINESS CREDIT was issued) confers a presumption of secondary meaning ***at the time of registration***—not an earlier date—"and therefore registration cannot support a presumption for the period before registration." *Converse, Inc. v. Int'l Trade Comm'n Skechers U.S.A., Inc.*, 909 F.3d 1110, 1117–18 (2d Cir. 2018). Because MIDCAP BUSINESS CREDIT was not registered until 2015, and the Complaint alleges that Defendants began using MIDCAP FINANCIAL in 2008, the registration does nothing to advance Plaintiff's claim that it has protectable rights in the descriptive word "midcap" standing alone that it can assert against Defendants. Accordingly, Plaintiff must independently plead and prove that MIDCAP had acquired secondary meaning — that is, that the "primary significance" of MIDCAP "to relevant consumers '[was] to identify [the trademark holder as] the source of the product'" — before Defendants started using MIDCAP FINANCIAL. *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 160 (2d Cir. 2016) (quoting *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1041 (2d Cir. 1992)); *see also Beneficial Corp.*, 529 F. Supp. at 447 ("In order to invoke the protection of s 43(a) of the Lanham Act, a user of an

unregistered name or mark must demonstrate that its name has acquired secondary meaning.")
(internal quotation marks omitted).

Setting aside the federal trademark registration for MIDCAP BUSINESS CREDIT (as
this Court must when assessing Plaintiff's purported rights in MIDCAP standing alone),
Plaintiff offers only insufficient and conclusory allegations that it had established secondary
meaning in the term "midcap" before Defendants started using MIDCAP FINANCIAL in 2008.

2.  *Plaintiff Fails To Allege It Established Secondary Meaning In MIDCAP*
    *Before Defendants Began Using MIDCAP FINANCIAL*

There can be no doubt that "midcap" is a descriptive (if not generic) word.  Plaintiff
conceded it before the USPTO.  Additionally, "midcap" is a well-recognized, ubiquitous term in
the financial services industry.  Multiple dictionaries include definitions for the term "midcap."
*See, e.g.,* Ex. H (American Heritage dictionary) ("Of or relating to corporations whose retained
earnings and outstanding shares of common stock have a value between those of small cap
companies and large cap corporations."), (Investopedia) ("the term that is used to designate
companies with a market cap (capitalization)—or market value—between $2 and $10 billion"),
(Dictionary.com) ("designating a company, or a mutual fund that invests in companies, with a
market capitalization of between $1 billion and $5 billion").  Unsurprisingly, companies
routinely incorporate "midcap" into their names, or the names of their products and services,
including stock indices (*e.g.*, Russell Midcap Index and S&P MidCap 400 Index), other lenders
(*e.g.*, MidCap Hotel Loans and MidCap Loans LLC), mutual funds (*e.g.*, Vanguard Mid-Cap
Growth Fund and Thompson MidCap Fund), and financial advisors (*e.g.*, MidCap Advisors
LLC).  *See* Ex. I.  Even a cursory scan of news articles reveals dozens of uses of the term midcap
in the past 30 days alone (examples of which are included as Exhibit J to the Kagan

Declaration).[6]  The Complaint falls far short of alleging that Plaintiff ever established secondary meaning in the word "midcap," much less did so prior to 2008.

In assessing whether a mark has acquired secondary meaning, courts consider: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use." *Kelly-Brown v. Winfrey*, 95 F. Supp. 3d 350, 359 (S.D.N.Y. 2015).

Not only must a plaintiff establish secondary meaning in a descriptive term, but it also must establish that it established that meaning before the defendant began using the allegedly infringing mark.  *See PaperCutter, Inc. v. Fay's Drug Co., Inc.*, 900 F.2d 558, 564 (2d Cir. 1990) ("an owner of a descriptive mark must demonstrate that the mark had acquired secondary meaning *before* its competitor commenced use of the mark") (emphasis added);  *Saratoga Vichy*, 625 F.2d at 1043  ("Even if Saratoga Vichy has rights in the name 'Saratoga' because its use of the name has acquired a secondary meaning, it could not prevent the use of that term by one whose use had begun before the secondary meaning was acquired.").

The Complaint is entirely silent on two of the five factors courts consider when assessing whether secondary meaning exists:  there is not a single allegation regarding (i) consumer studies (i.e., surveys) linking the mark to a source or (ii) attempts to plagiarize the MIDCAP mark.  That

---

[6]    The Court may take judicial notice of dictionary definitions, publicly available websites, and news articles.  *See In re Salomon Analyst Winstar Litig.*, No. 02 Civ. 6171(GEL), 2006 WL 510526, at *4 n.6 (S.D.N.Y. Feb. 28, 2006) (on a motion to dismiss, courts may take judicial notice of newspaper articles and other facts that can be verified and whose accuracy cannot reasonably be questioned) (collecting cases).  The Court need not rely on those documents to resolve any factual issue on this motion, though for the Court's convenience, they are attached as Exhibits H, I, and J, respectively, to the Kagan Declaration filed herewith.

is hardly surprising given the ubiquitous use of the term "midcap" in the financial services industry.

As to exclusivity of use, the Complaint alleges in conclusory fashion that Plaintiff has "extensive[ly] and continuous[ly] use[d] [ ] the MIDCAP Marks since 2004" and that Plaintiff's "use of the term MIDCAP as a source identifier for lending services has been substantially exclusive," but for Defendant's use. *Id.* ¶¶ 42, 83. The Court, however, is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions" on a motion to dismiss. *Jackson v. State of Conn. Dep't of Public Health*, No. 15-cv-750 (CSH) 2016 WL 3460304, at *16 (D. Conn. June 20, 2016) (quoting *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011); *accord Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 307 (2d Cir. 2006) (affirming dismissal of trademark claims where complaint consisted of "conclusory allegations unsupported by factual assertions and therefore it fail[ed] even the liberal standard of Rule 12(b)(6).") (citation and quotation marks omitted). The allegation that Plaintiff exclusively uses "midcap" is plainly implausible, especially in light of the number of companies in the financial services industry that incorporate "midcap" into their names, and the names of their products and services. *See, e.g.,* Ex. I (identifying lenders, among others, that incorporate the term "midcap" in their names)

To the extent the other factors are addressed at all, the vast majority of the Complaint's allegations relate to Plaintiff's activities *after* 2008, when, as alleged in the Complaint, Defendants first began using MIDCAP FINANCIAL. Compl. ¶ 8. For example, eight out of the nine news articles and industry awards attached to the Complaint as Exhibit C are dated 2012 or later. Additionally, the marketing materials attached as Exhibit B to the Complaint do not indicate that Plaintiff spent substantial resources on advertising promoting its purported

MIDCAP mark, or that Plaintiff received any unsolicited press coverage, **before 2008**.  The press releases from before 2008 that are included in Exhibit B were all distributed by Plaintiff, and therefore do not establish "unsolicited" media coverage.

The Complaint's only allegations of Plaintiff's activities before 2008 are sparse and conclusory.  Plaintiff alleges that its predecessor in interest "adopted [the MIDCAP] name and began building the MIDCAP brand in early 2004" and launched a website with its branding "featuring on every page its MIDCAP logo."  *Id.* ¶ 34.  Significantly, Plaintiff does not allege that these efforts caused consumers to associate MIDCAP exclusively with Plaintiff, which is what is required to establish secondary meaning.  *See Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 344 (E.D.N.Y. 2014) ("blanket assertion" of sales success, "without any details of plaintiffs' efforts to associate the [product's] trade dress with [the plaintiff], fails to support an inference of consumer identification with the alleged trade dress") (holding plaintiff failed to adequately plead secondary meaning).

Where, as here, the Complaint lacks the "minimum facts necessary to support a finding of secondary meaning," it should be dismissed.  *Hello I Am Elliot, Inc. v. Sine*, 19 Civ. 6905 (PAE), 2020 WL 3619505, at *10 (S.D.N.Y. July 2, 2020) (dismissing complaint where plaintiff failed to allege "sufficient facts to support an inference of secondary meaning").

### B.    The Complaint Fails To Plausibly Allege A Likelihood Of Confusion

The Complaint should be dismissed not only because Plaintiff fails to adequately allege that it has protectable trademark rights in MIDCAP, but also because it fails to adequately allege a likelihood of confusion exists.

In assessing likelihood of confusion, courts in the Second Circuit apply the eight non-exclusive factors articulated in *Polaroid Corp. v. Polarad Electronics Corp.*:  (1) the strength of

the mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will bridge the gap; (5) actual confusion; (6) the defendant's good faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the buyers. 287 F.2d 492, 495 (2d Cir. 1961). "The evaluation of the *Polaroid* factors is not a mechanical process where the party with the greatest number of factors weighing in its favor wins. Rather, a court should focus on the ultimate question of whether consumers are likely to be confused." *Le Book Publ'g Inc. v. Black Book Photography, Inc.*, 418 F. Supp. 2d 305, 311 (S.D.N.Y. 2005) (citation and quotation marks omitted) (dismissing trademark infringement claim).

As the Second Circuit recently explained, "district courts can and do properly dismiss [trademark infringement] claims when the allegation of consumer confusion is implausible, and [the Second Circuit has] affirmed dismissals in such cases." *E.A. Sween Co., Inc. v. A & M Deli Express Inc.*, 787 F. App'x 780, 782–83 (2d Cir. 2019); *see also* 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32:121.75 (5th ed. 2021) ("[A] growing number of courts have dismissed a trademark infringement complaint on a Rule 12(b)(6) motion when the allegations of a likelihood of confusion are implausible in view of the facts alleged.").

That is particularly true where, as here, a plaintiff alleges a likelihood of confusion based on the defendant's use of a descriptive or generic word. *See, e.g.*, *Lopez v. Adidas Am., Inc.*, 19-cv-7631 (LJL), 2020 WL 2539116, at *9 (S.D.N.Y. May 19, 2020) ("[Defendant] is correct that there is precedent for dismissing a trademark infringement claim at the motion to dismiss stage based on this factor [similarity of marks]. . . . [The defendant] is also correct that courts have dismissed trademark infringement claims where the only similarity was a common word or phrase.") (citations omitted); *Le Book*, 418 F. Supp. 2d at 311 (dismissing trademark

14

infringement claim where "[t]he only word in common in the marks is 'Book,' which is an unregistrable component of the mark").

An application of the *Polaroid* factors to the facts alleged in the Complaint demonstrates that likelihood of confusion is implausible as a matter of law.

(a)     *Strength of the Mark*

To the extent Plaintiff can establish any protectable rights in MIDCAP (and they cannot for the reasons discussed above), it is a weak mark. Plaintiff has conceded that MIDCAP is descriptive, and "[a] descriptive mark is an inherently weak mark." *J.T. Colby & Co., Inc. v. Apple Inc.*, No. 11 Civ. 4060(DLC), 2013 WL1903883, at *15 (S.D.N.Y. May 8, 2013). Moreover, where the word at issue (here "midcap") is a common word in the public domain, that lessens the possibility of confusion. *E.g.*, *Gruner + Jahr*, 991 F.2d at 1078 ("The fact that the term 'parents' resides in the public domain,. . . lessens the possibility that a purchaser would be confused and think the mark came from a particular single source.") (citation omitted). That is especially true given that Plaintiff's and Defendants' customers are financial professionals who are no doubt well acquainted with the term "midcap" as a descriptor of a type of company.

(b)     *The Degree of Similarity*

The fact that two marks share an element does not mean they are similar for purposes of the second *Polaroid* factor. *See LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 682 (S.D.N.Y. 2016) ("That two marks share an element does not mean they are likely to be confused."); *Brockmeyer v. Hearst Corp.*, 248 F. Supp. 2d 281, 296 (S.D.N.Y. 2003) ("simply because [two marks] contain [a] common element does not mean that they are 'similar' for the purpose of assessing confusion under the *Polaroid* factors") (citation omitted). That is particularly true where the only similarity is a common word or phrase.

Here, the only similarity between Plaintiff's purported mark and Defendants' use of MIDCAP FINANCIAL is the common word "midcap." Confusion is particularly unlikely given the differences in appearance between the two marks, as shown below. *See E.A. Sween Co.*, 787 F. App'x at 784 (affirming dismissal of trademark infringement claim where "[t]he differences in use, font, colors, and arrangement are stark"); *Le Book*, 418 F. Supp. 2d at 311 (no likelihood of confusion as a matter of law where only common word was "Book" and marks had different typefaces, styles, and were "visually distinct").

 

(c)    *The Sophistication of Consumers*

Plaintiff and Defendants provide specialized loans to commercial enterprises, with highly sophisticated intermediaries involved in the lending process. Indeed, Plaintiff told the USPTO that it has "sophisticated customers." Kagan Decl. Ex. D at 3. And the Complaint alleges that Plaintiff "works with small and mid-size manufacturers, distributors, wholesalers, service companies, and other commercial and industrial businesses[, and] provides working capital loans to companies generally unable to obtain traditional bank financing sufficient to support their growth or unique working capital needs." Compl. ¶ 2. The "primary sources of [Plaintiff's] new business are professionals within commercial banks, investment banks, turn-around consulting firms, and in more recent years, private equity sponsors, and privately held wealth management companies, as well as attorneys and accountants." *Id.* ¶ 39. Similarly, Defendants provide

"asset-based loans to mid-sized companies" and "work[ ] with management teams and sponsors to deliver thoughtful and cost effective debt solutions." *Id.* ¶¶ 10, 55.

The sophistication of the companies and individuals that Plaintiff and Defendants serve weighs against a likelihood of confusion. *See Beneficial Corp.*, 529 F. Supp. at 450 ("The fact that the use of a particular service entails both substantial funds and a fairly detailed purchasing process is recognized as being a significant index of buyer sophistication.") (citation and quotation omitted); *see also Omicron Capital, LLC v. Omicron Capital, LLC*, 433 F. Supp. 2d 382, 394 (S.D.N.Y. 2006) ("Plaintiff's 'smart' and 'savvy' investors perform research and due diligence before investing their money with Plaintiff's fund, going so far as to investigate Plaintiff's principals . . . . Given their sophistication, the consumers of Plaintiff's and Defendant's services are unlikely to be confused based upon Defendant's use of 'Omicron Capital.'"); *Franklin Res., Inc. v. Franklin Mgmt. Corp.*, 988 F. Supp. 322, 330 (S.D.N.Y. 1997) (confusion not likely where consumers were "professional broker-dealers. It is not likely that a broker-dealer, who happens to learn that a company called Franklin Credit is engaged in the loan collection business, would confuse that company with Franklin Resources, linked to the broker-dealer as participants in the mutual funds business.").

### (d)     *The Defendant's Good Faith*

The Complaint does not contain a single non-conclusory allegation that Defendants adopted the MIDCAP FINANCIAL name in bad faith.  Even assuming Plaintiff owns protectable trademark rights in MIDCAP, and even assuming Defendants knew about Plaintiff's purported rights (which the Complaint does not even allege), that would be insufficient to establish that Defendants' use of MIDCAP FINANCIAL was in bad faith.  That is because "evidence on this *Polaroid* factor is insufficient when it solely demonstrates that a defendant was

aware of a plaintiff's marks before proceeding to use its own modified version." *Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368, 388 (S.D.N.Y. 2008) ("Where there is 'no evidence that the [defendant] acted in bad faith in any sense relevant to the Lanham Act, that is, by deceiving customers into believing that its products [ ] were related to' the plaintiff, this factor favors defendant.") (quoting *N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel, LLC,* 293 F.3d 550, 556 n.1 (2d Cir. 2001)). Indeed, the Complaint alleges that MIDCAP FINANCIAL was adopted some six years before Plaintiff applied to register MIDCAP BUSINESS CREDIT as a trademark. *See* Compl. ¶¶ 8, 44.

### (e)    *Actual Confusion*

The so-called "actual confusion" alleged in the Complaint consists of misdirected emails and communications, Compl. ¶¶ 60, 61, 63, search results on a website providing "a mix of articles about Plaintiff MidCap and the Defendants," *id.* ¶ 66, and errors in a news article, *id.* ¶ 64, in a pitch-book prepared by an accounting firm, *id.* ¶ 65, and by an award sponsor, *id.* ¶62. Even if the Court fully credits these alleged instances of actual confusion, they are not the type of confusion that the Lanham Act protects against, and therefore do not favor Plaintiff in the *Polaroid* analysis. Rather, the Lanham Act "protects only against **mistaken purchasing decisions** and not against confusion generally." *Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, 335 F. Supp. 3d 566, 589 (S.D.N.Y. 2018) (emphasis added) (citation omitted); *Programmed Tax Sys. v. Raytheon Co.*, 439 F. Supp. 1128, 1132 (S.D.N.Y. 1977) ("the confusion or deception with which the statute is concerned is that which affects the 'market,' *i.e.*, the purchasing and selling of the goods or services in question") (citation omitted).

The Complaint does not identify a single instance of a borrower taking a loan from Defendants (*i.e.*, making a "purchasing decision") under the mistaken belief that the borrower

was taking a loan from Plaintiff, or vice versa. Accordingly, the allegations do not reflect actual confusion. *See Omicron Capital*, 433 F. Supp. 2d at 393–94 (no actual confusion where plaintiff identified "no potential or current investors or investment targets that have made investment decisions based on Defendant's use of the mark"); *see also Codename Enters., Inc. v. Fremantlemedia N. Am., Inc.*, 16 Civ. 1267 (AT) (SN), 2018 WL 3407709, at *10 (S.D.N.Y. Jan. 12, 2018) (alleged instances of actual confusion "in the form of misdirected emails, incorrect social media mentions and tags, and phone calls and voicemail messages . . . do not constitute actual confusion because there is no evidence that they involve confusion about purchasing decisions") (citation omitted); *Lang v. Retirement Living Publ'g Co., Inc.*, 949 F.2d 576, 583 (2d Cir. 1991) (phone calls intended for defendant but misdirected to plaintiff do not establish "actual confusion" because the plaintiff "has not shown that these misdirected callers were prospective purchasers of [plaintiff's] products").

(f)     *Remaining Factors*

An analysis of the remaining factors—quality of the services, proximity of the services, and bridging the gap—does not make out a plausible claim for likely confusion. The factor regarding quality "is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." *Codename Enters.*, 2018 WL 3407709, at *12 (citation omitted). The Complaint, however, contains no allegations about the quality of Defendants' lending services, much less allegations that they are inferior to Plaintiff's services. To the contrary, the Complaint acknowledges Defendants' services are award-winning. Compl. ¶ 60. Although both Plaintiff and Defendants provide lending services, this single factor does not make a likelihood of confusion plausible in light of

the other *Polaroid* factors (and bridging the gap is "irrelevant" where there is no gap to bridge).[7]

*Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 387 (2d Cir. 2005).

In addition to the majority of the *Polaroid* factors favoring dismissal, the Court can and should consider the complete context of the marks and their use; where, as here, "[t]he marks are too dissimilar, the evidence of actual confusion is too weak and too attenuated, and the absence of any allegation of bad faith or a poor [defendant] product is too pronounced to establish a federal trademark claim," dismissal is appropriate. *Lopez*, 2020 WL 2539116, at *13 (case dismissed even though just four factors favored defendant); *see also E.A. Sween Co.*, 787 F. App'x at 785–86 (affirming dismissal where four factors favored defendant and, "[t]aken as a whole, it is unlikely that consumers would confuse" the plaintiff's and defendant's brands); *Le Book*, 418 F. Supp. 2d at 311 (dismissing trademark infringement claim where "degree of similarity" element "overwhelm[ed] any possibility of confusion"); *Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*, No. 11 Civ. 8921(DAB), 2013 WL 6670584, at *5 (S.D.N.Y. Mar. 29, 2013) (dismissing trademark infringement claim and finding allegations insufficient because the "likelihood that actual or potential consumers would be confused about the source of [the plaintiff's online services] is remote").

## II.     Plaintiff's Claims Are Barred By Laches

Even if Plaintiff could establish the elements of its trademark infringement and unfair competition claims, the claims are untimely and should be dismissed under the equitable doctrine of laches, which bars relief where a plaintiff unreasonably delays in commencing an action. *Fitzpatrick v. Sony-BMG Music Ent., Inc.*, No. 07 Civ. 2933(SAS), 2007 WL 2398801, at *2

---

[7]    The allegation that Plaintiff's and Defendants' services are similar and that, therefore, there is no gap to bridge, is taken as true solely for purposes of this motion. Defendants serve a different segment of the midcap market than Plaintiff, and they do not concede that they provide the same services as Plaintiff.

(S.D.N.Y. Aug. 15, 2007); *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006) ("It is well established that laches is a valid defense to Lanham Act claims for both monetary damages and injunctive relief."). Laches applies where: "(1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay." *Fitzpatrick*, 2007 WL 2398801, at *2.

This is the rare case "when the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar, [and therefore the] court may consider the defense on a motion to dismiss." *Fitzpatrick*, 2007 WL 2398801, at *3 (citation omitted) (dismissing trademark infringement claim at the pleading stage because laches was clear on the face of the complaint); *accord Solow Bldg. Co., LLC v. Nine West Group, Inc.*, No. 00 Civ. 7685(DC), 2001 WL 736794, at *3 (S.D.N.Y. June 29, 2001).

In the Second Circuit, laches presumptively applies to trademark infringement and unfair competition claims brought more than six years after plaintiff learned of the underlying facts. *Fitzpatrick*, 2007 WL 2398801, at *2. Because the Complaint alleges Plaintiff learned of MIDCAP FINANCIAL no later than 2012 but delayed brining suit until 2021, Plaintiff bears the burden "to aver and prove the circumstances making it inequitable to apply laches to his case." *Id.* (quoting *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996)); *Haggar Int'l Corp. v. United Co. for Food Indus. Corp.*, 906 F. Supp. 2d 96, 135 (E.D.N.Y. 2012) ("Once the presumption arises, the burden shifts to [the complainant] to come forward with evidence to establish that the delay was excusable and that [the junior user] suffered no prejudice from the delay."); *see also Solow Bldg. Co.*, 2001 WL 736794, at *3 ("when the suit is brought after the statutory time has elapsed, the burden is on the complainant to allege . . . the circumstances making it inequitable to apply laches in its case") (citation omitted).

The Complaint concedes that Plaintiff was aware of the MIDCAP FINANCIAL mark for at least nine years—since August 2012—before filing this lawsuit. *See* Compl. ¶ 48. Plaintiff last sent a demand letter to Defendant MidCap Financial LLC in September 2014, more than seven years ago. *Id.* ¶¶ 51–52. Perhaps recognizing that laches applies, the Complaint vaguely alleges, in conclusory fashion, that the parties engaged in unspecified "settlement negotiations" at some point following the demand letter, but the Complaint is bereft of any facts about the timing and nature of the negotiations that could provide any basis to excuse Plaintiff's delay. *Id.* ¶ 53.

Fully aware of Defendants' allegedly infringing use, and of alleged instances of actual confusion in 2012 and 2014, *id.* ¶¶ 60–61, Plaintiff lay in wait while it "continued to stand on its objections to Defendants' infringement" and attempted "to strengthen its own rights," *id.* ¶ 54. But a plaintiff is not rewarded when it sleeps on its rights or lies in wait to "strengthen" them. "The very point of laches is not for the wait-and-see convenience of a plaintiff but to avoid unfair prejudice to a defendant. Laches requires a plaintiff to file suit for a known trademark infringement before the defendant foreseeably commits continuing resources year after year to promoting a product and entrenching itself in the market." *Ill. Tool Works Inc. v. J-B Weld Co., LLC*, No. 3:19-cv-1434 (JAM), 2021 WL 4310576, at *4 (D. Conn. Sept. 22, 2021) (citing *Conopco, Inc.*, 95 F.3d at 192).

The Complaint itself alleges facts demonstrating that Defendants have expanded their business under the MIDCAP FINANCIAL mark while Plaintiff delayed, and thus Defendants will be prejudiced if Plaintiff is permitted to maintain its claims. For example, the Complaint alleges: "Defendants expanded use of the identifiers MIDCAP and MIDCAP FINANCIAL, using them as an umbrella brand for numerous affiliated entities, which collectively market and

sell their services in the United States and other jurisdictions under those marks." Compl. ¶ 10.

Additionally, the Complaint alleges that Defendants expanded from initially being a "niche healthcare submarket" in 2008, *id.* ¶ 8, to "offer asset-based lending to companies of all types" starting in 2014. *Id.* ¶ 51. The case law recognizes that prejudice is established where a defendant "expand[s] its business or enter[s] into business transactions based on his presumed rights." *Miller*, 454 F.3d at 999; *Conopco, Inc.*, 95 F.3d at 192 (prejudice found where defendant "committed massive resources to best exploit a marketing strategy which it chose a half dozen years ago").

The Complaint thus establishes on its face that Plaintiff's claims are barred by laches, and there is no public interest reason not to apply it in this case. Accordingly, the Court should dismiss the Complaint with prejudice.

## III. The New York General Business Law Claim Should Be Dismissed Because There Are No Allegations Of Harm To Public Health Or Safety

Plaintiff's third cause of action for unfair trade practices under Section 349 of the New York General Business Law ("GBL") must be dismissed because the "majority view" in the Second Circuit is that "[trademark] infringement claims are not cognizable under [§ 349] unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement." *MyPlayCity, Inc. v. Conduit Ltd.*, No. 10 Civ. 1615(CM), 2012 WL 1107648, at *15 (S.D.N.Y. Mar. 30, 2012) (citation and quotation marks omitted).

GBL § 349 is a consumer protection statute that requires a plaintiff to prove: "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Id.* (citation and quotation marks omitted). "However, when a corporate competitor raises a § 349 claim, [t]he gravamen of the complaint must be consumer injury or harm to the public interest." *Id.* (citation and internal

quotation marks omitted).  "Injury or harm that satisfy this standard include 'potential danger to the public health or safety,'" *id.* (citation and internal quotation marks omitted), or "would trigger Federal Trade Commission [FTC] intervention."  *Boarding Sch. Review*, 2013 WL 6670584, at *6.

The Complaint does not, and cannot possibly, allege danger to public health or safety, or conduct that would rise to the level of triggering FTC intervention.  Accordingly, the claim for violation of GBL § 349 should be dismissed.  *MyPlayCity, Inc.*, 2012 WL 1107648, at *16 (dismissing GBL § 349 claim where "the gravamen of the complaint is harm to [plaintiff] via trademark infringement, not to the public at large");  *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 679 (S.D.N.Y. 2016) ("even if [the plaintiff] had shown confusion [in trademark infringement claim], that would not qualify as 'public harm' actionable under § 349"); *Boarding Sch. Review*, 2013 WL 6670584, at *6 (dismissing GBL § 349 counterclaim where "[n]othing in Defendants' Counterclaims approaches a plausible allegation of the type of direct and broad harm to consumers or the general public that would trigger Federal Trade Commission intervention."); *Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, No. 96 Civ. 5150 (JFK), 1997 WL 137443, at *3 (S.D.N.Y. Mar. 24, 1997) (complaint dismissed where it was "devoid of allegations supporting an inference that the public's health or safety is at stake as a result of the alleged infringement") (dismissing GBL § 349 claim); *La Cibeles, Inc. v. Adipar, Ltd.*, No. 99 Civ. 4129(AGS), 2000 WL 1253240, at *15 (S.D.N.Y. Sept. 1, 2000) ("trademark infringement actions alleging only general consumer confusion do not threaten the direct harm to consumers that is required to state a claim under section 349") (citation and quotation marks omitted).

Alternatively, after dismissing Plaintiff's federal claims, the Court can and should decline to exercise supplemental jurisdiction over Plaintiff's GBL claim. *See In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (affirming district court's decision to decline supplemental jurisdiction because "[t]his Court and the Supreme Court have held that when the federal claims are dismissed the 'state claims should be dismissed as well'") (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *N.Y. Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*, 497 F.3d 109, 119 (2d Cir. 2007) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.") (citation and quotation marks omitted); *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 532 (S.D.N.Y. 2007) ("in the 'usual case' in which all federal-law claims have been eliminated prior to trial, the balance of factors will weigh in favor of declining to exercise jurisdiction").

[remainder of page intentionally left blank]

For the foregoing reasons, Defendants respectfully request that the Court dismiss the

Complaint in its entirety.

Dated: December 3, 2021
      New York, New York

Respectfully submitted,

**DEBEVOISE & PLIMPTON LLP**

By: */s/ James J. Pastore*

    James J. Pastore
    Jared I. Kagan
    *jjpastore@debevoise.com*
    *jikagan@debevoise.com*

919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Defendants MidCap Financial Trust,*
    *MidCap Financial Services, LLC, MidCap*
    *Financial Services Capital Management, LLC,*
    *MidCap FinCo Designated Activity Company, and*
    *Apollo Capital Management, L.P.*